Charles C. Weller (SBN: 207034)
legal@cweller.com
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorney for Plaintiff
Kasama Brand

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KASAMA BRAND, *individually and on behalf of all those similarly situated*, <br><br> *Plaintiff*, <br><br> *v.* <br><br> SLIMFAST FOODS COMPANY, *a Delaware corporation*, <br><br> *Defendant*. | ) ) ) ) ) ) ) ) ) ) ) <br> No. **'22 CV 0392 BEN JLB** _____ <br><br> JURY TRIAL DEMANDED |

_____

## CLASS ACTION COMPLAINT

1. When consumers read "zero sugar," they think "low calorie." For millions of Americans who watch their weight, a statement that a food has "zero sugar" or "zero added sugar" is tantamount to saying that it's a diet food.

2. The federal Food and Drug Administration ("FDA") has recognized— and actually written into the Code of Federal Regulations—this common-sense insight. At 21 C.F.R. § 101.60(c), in a set of regulations governing sugar claims

on food labels, the agency states that "Consumers may reasonably be expected to regard terms that represent that the food contains no sugars or sweeteners *e.g.*, 'sugar free,' or 'no sugar,' as indicating a product which is low in calories or significantly reduced in calories." Thus, under federal law these statements can only be made for foods that actually are low- or reduced-calorie. Otherwise, the sugar claim must be immediately accompanied by a disclaimer, to the effect that the food is "not for weight control" or "not a low calorie food." *Id*. at § 101.60(c)(iii). This requirement helps prevent consumer confusion and serves important health and dietary interests.

3.    Capitalizing on the craze for low-carbohydrate, high-protein foods, Defendant SlimFast Foods Company ("SlimFast") has sold millions of dollars' worth of chocolate snack cups under the brand name "Keto Fat Bomb." These snack cups state prominently on the front label that they have "Zero Added Sugar"—a clear indication of the importance that so many consumers place on buying foods that can help them reduce their sugar intake. But contrary to common-sense consumer expectations, these snack cups are far from low-calorie foods. A single six-ounce serving of these snack cups contain about 90 calories— which is actually *more* than the 87 calories found in the same-sized serving of a Reese's Peanut Butter Cup, which the snack cups resemble.

4.    Likewise, SlimFast has sold ketogenic snack gels under the brand name "Keto Fat Bomb Shot" (together with the Keto Fat Bombs, the "Products").

These gels state prominently on the front label that they have "zero sugar," but again are not low- or reduced-calorie foods, with a single *one-ounce* serving containing about 100 calories.

5.     Because these Products do not meet the regulatory definition (or any consumer's expectation) of low- or reduced-calorie foods, federal regulations require Defendant to make a disclaimer that the Products are not for weight control, or the like. But the Products' labels do not contain the required disclaimer, which would provide material facts to give consumers the full picture about these Products' "zero added sugar" or "zero sugar" claim.

6.     The failure to include this disclaimer make the labels' claims false, deceptive, inaccurate, and/or misleading, and the labels (and Defendants' advertising) violate federal and state laws and regulations requiring accuracy in nutritional labels.

7.     Ms. Brand, and thousands of other consumers, purchased the Products in reliance on Defendant's marketing claims, and especially on the deceptive and misleading implication that these Products were low-calorie foods. Defendant reaped millions of dollars in profits from these consumers, who received an inadequate product sold under false pretenses.

8.     Ms. Brand brings this class action Complaint on behalf of herself and a Class of California consumers who purchased the Products. Under the laws of the state of California, Defendant has engaged in unfair and deceptive trade

practices, sold goods under false pretenses, and defrauded its customers of the benefit of their bargain. This Court should certify the proposed Class, find Defendant liable for consumer fraud and deceptive practices, and afford the Class and Ms. Brand equitable relief and compensatory, consequential, and punitive damages to the extent permitted by law.

## PARTIES

9.     Plaintiff Kasama Brand is, and at all times relevant has been, a resident of San Diego, California, which is located in this district.

10.    Defendant SlimFast Foods Company is a Delaware corporation with its principal place of business in Palm Beach Gardens, Florida.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code); specifically, under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

12.   Plaintiff is a citizen of a state different from defendant and seeks to represent other Class members who are citizens of states different from the Defendant.

13.   The matter in controversy in this case exceeds $5,000,000 in the aggregate, exclusive of interests and costs.

14.   In addition, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* U.S.C. § 1332(d)(5)(B).

15.   Alternatively, this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.

16.   This Court has personal jurisdiction over Defendant because this action arises out of and relates to SlimFast's contacts with this forum.

17.   Those contacts include but are not limited to sales of the Products directly to commercial and individual consumers located in this district, including Plaintiff; shipping the Products to commercial and individual consumers in this district; knowingly directing advertising and marketing materials concerning the Products into this district through wires and mails, both directly and through electronic and print publications that are directed to commercial and individual consumers in this district; and operating an e-commerce web site that offers the Products for sale to commercial and individual consumers in this district, as well as offering the Products for sale through third-party e-commerce websites, through

both of which commercial and individual consumers residing in this district have purchased the Products.

18.  SlimFast knowingly directs electronic activity and ships the Products into this district with the intent to engage in business interactions for profit, and it has in fact engaged in such interactions, including the sale of the Products to Plaintiff.

19.  SlimFast also sells the Products to retailers and wholesalers in this district for the purpose of making the Products available for purchase by individual consumers in this district.

20.  Plaintiff's losses and those of other Class members were sustained in this district.

21.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

22.  Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over defendant.

## FACTUAL ALLEGATIONS

23.  Millions of Americans—practitioners of diets such as "Atkins," "keto," "Whole30," "South Beach," or "paleo"—purchase foods that are low in carbohydrates and high in protein. For others, these purchases are not part of a specific diet plan, but simply an effort to eat fewer refined carbohydrates and less

sugar. Consumers use these products to supplement their diet, replace high-carb foods, reduce appetite, lose weight, and gain muscle.

24.   The publication *Food Insight* reports that roughly a quarter of Americans who follow an eating plan use some variant of the low-carb, high-protein approach. *See* https://foodinsight.org/one-third-of-americans-are-dieting-including-one-in-10-who-fast-while-consumers-also-hunger-for-organic-natural-and-sustainable/.

25.   Globally, the market for ketogenic products alone is expected to grow from $10.3 billion in 2018 to $17.8 billion by 2026 at a compound annual growth rate of 7.1 percent during the forecast period from 2019 to 2026. *See* https://www.globenewswire.com/newsrelease/2020/02/27/1991616/0/en/Global-Keto-Diet-Market-Is-Expected-to-Reach-USD-17-8-Billion-by-2026-Fior-Markets.html.

26.   Meanwhile, almost three-quarters of American report they are trying to reduce their sugar intake, with about 30 percent reporting they are doing so by switching to reduced-sugar food products. *See* https://www.foodbusinessnews.net/articles/16324-fewer-americans-seek-to-limit-sugar-ific-survey-says.

**A.   Sugar Claims and Federal Regulation.**

27.   In 1993, the Food and Drug Administration promulgated final rules governing nutrient claims on food labels, pursuant to authority provided to it under

Section 201(n) of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 321(n), as well as Sections 403(a), 403(r), and 701(a) of the Act. The goal of these regulations was, *inter alia*, to "prohibit labeling that [is] false or misleading in that it fails to reveal facts that are material in light of the representations that are made" with respect to the food. Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms, 58 Fed. Reg. 2302, 2303 (1993).

28.   As part of these regulations, FDA determined that food manufacturers could not use terms "such as 'sugar free,' 'free of sugar,' 'no sugar,' 'zero sugar,' 'without sugar,' 'sugarless,' 'trivial source of sugar,' 'negligible source of sugar,' or 'dietarily insignificant source of sugar'" unless (1) the food met the regulatory definition of a low- or reduced-calorie food, or (2) the term "is immediately accompanied, each time it is used, by either the statement 'not a reduced calorie food,' 'not a low calorie food,' or 'not for weight control.'" 21 C.F.R. §§ 101.60(c) and (c)(iii)(B).

29.   For "Zero added sugar claims," besides bearing a disclaimer to the effect that the food is not "low calorie" or "calorie reduced," manufacturers face an additional requirement: The product labels must "direct[] consumers' attention to the nutrition panel for further information on sugar and calorie content." 21 C.F.R. § 101.60(c)(2)(v).

30.    This list of terms that require disclaimer is not exclusive and the terms requiring disclaimer include other terms that the functional equivalent of those listed in the regulations.

31.    Unusually, the agency explained its reasoning for this requirement directly in the Code of Federal Regulations: "Consumers may reasonably be expected to regard terms that represent that the food contains no sugars or sweeteners *e.g.*, 'sugar free,' or 'no sugar,' as indicating a product which is low in calories or significantly reduced in calories." *Id.* § 101.60(c). Accordingly, the disclaimer was required in order meet the regulatory goal of prohibiting labels that are misleading because they "fail[] to reveal facts that are material in light of the representations that are made." 58 Fed. Reg. at 2303.

32.    Claims that a food was "low" in some potentially harmful nutrient such as sugar, fat, or sodium were of especial interest to FDA, because "low" or "zero" claims "may promote increased consumption of such foods and thus, result in dietary practices even more inconsistent with dietary guidelines" if the claim was implicitly misleading without contextualizing disclaimers. *Id.* at 2316.

**B.    SlimFast's Sugar Claims.**

33.    SlimFast Foods Company was founded in the 1970s and is now one of the largest, most prominent companies in the world in the field of weight loss and diet foods. The venture capital fund Kainos Capital—which owned the brand from 2014 to 2018—refers to SlimFast as an "iconic weight loss and meal replacement

brand" that has "#1 brand awareness in the weight loss category." https://www.kainoscapital.com/portfolio/slimfast/. SlimFast was sold to global food conglomerate Glanbia plc for $350 million in 2018.

34.    Consumers immediately associate SlimFast with low- and reduced-calorie foods, and the company spend millions of advertising dollars every year to cement that association in consumers' minds.

35.    SlimFast launched a line of "ketogenic" products in October 2018. By January 2020, that product line included 21 distinct products and SlimFast Keto has become the best-selling line of ketogenic food products in the country. In January 2020, the company claimed that its sales accounted for "70% of all measured Keto sales in the past four weeks." https://www.prnewswire.com/news-releases/slimfast-expands-its-best-selling-line-of-keto-products-with-13-new-additions-300984351.html.

36.    One of the leading SlimFast Keto Products is the "Fat Bomb," a chocolate snack cup, resembling a Reese's Peanut Butter Cup, that consists of a white or milk chocolate coating with various flavorings inside, including peanut butter, mint chocolate, iced lemon drop, and coconut cream dark chocolate.

37.    The zero-added sugar claim is displayed prominently on the Products' packaging, as shown below in this photograph of the Product purchased by Plaintiff:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17
18
19
20

38.    The Fat Bombs' labels advertised these snack cups as easy to use, "on-the-go" snacks and stated that they would make it "easy to stay on plan and achieve your weight loss goals."

21
22
23
24
25
26
27
28

39.    The Fat Bombs use the same base formulation, varying only in terms of flavoring agents. They are also sold for similar pricing and the label for each individual flavor also makes similar deceptive statements and/or material omissions regarding whether the Product is a low- or reduced-calorie food. Each flavor of the Products is therefore substantially similar to all other flavors of the Products.

40.   Another SlimFast Keto product are "Fat Bomb Shots," a gel resembling those used by long-distance runners. It consists of an ounce of gel made with coconut oil and comes in two flavors, Tangy Orange Crème and Salted Caramel Crème.

41.   The zero sugar claim is displayed prominently on the Products' packaging and nutritional labelling, as shown below:



42.   Again, the Fat Bomb Shots use the same base formulation, varying only in terms of flavoring agents. They are also sold for similar pricing and the label for each individual flavor also makes similar deceptive statements and/or material omissions regarding whether the Product is a low- or reduced-calorie

food. Each flavor of the Products is therefore substantially similar to all other flavors of the Products.

43.    Nowhere on the Products' label does SlimFast state that the Products are not low- or reduced-calorie foods, nor do they make any of the disclaimers required by 21 C.F.R. § 101.60(c).

44.    These Products do not meet the regulatory definition of a low- or reduced-calorie food.

45.    These Products are sold at a substantial premium to other weight loss snacks that they resemble, as well as to similar snacks that are not for weight loss, such as Reese's Peanut Butter Cups.

46.    Plaintiff reserves the right to amend this Complaint to add additional SlimFast Products that make similar misleading and/or deceptive label claims.

47.    Other high-protein, low-carb food replacements that compete with SlimFast Keto—including many foods sold under the "Atkins" brand name, associated with the low-carb Atkins diet—use the required disclaimer when making zero-sugar claims.

48.    After counsel for Ms. Brand contacted counsel for SlimFast, on information and belief, the company updated the description of at least the Keto Fat Bombs on its website, adding the statement "Not a low-calorie food" in a section that is hidden from view on first opening the website, but can be expanded by clicking:

1
2
3
4
5
6
7
8

---

**Description**                                        —

Rediscover your inner chocolate lover and ditch your cravings with
a rich and creamy Peanut Butter Chocolate Fat Bomb Keto Snack
Cup! Ignite your snack time with the savory flavor of peanut butter
covered in decadent chocolate in every satisfying bite. They are
conveniently packaged for a quick pick-me-up even when you're
on the go. With only 2g net carbs, zero added sugar† and 8g of
high-quality fats, like MCT Oil, you can enjoy this indulgent treat
without the compromise. Free from gluten, artificial sweeteners,
flavors or colors these will surely become your new guilt-free
pleasure!
†Not a low-calorie food.

---

9
10
11
12
13
14
15

49.   However, despite adding this disclaimer to the language of its website,

throughout 2021, SlimFast was still selling Products whose labelling did not

include the required disclaimer. These Products, for example, were offered for sale

in high-traffic end caps and solo displays in Wal-Marts throughout the country,

for which SlimFast on information and belief paid a promotional fee to the retailer:

16
17
18
19
20
21
22
23
24
25
26
27
28

 

CLASS ACTION COMPLAINT

## C.   Ms. Brand Purchases the Products.

50.   Like millions of Americans, Ms. Brand tries to eat foods that are high in protein and low in sugar. She is also concerned about caloric intake and prefers low- or reduced-calorie foods.

51.   In or around November 2020, Ms. Brand purchased a 14-count box of SlimFast Keto Bomb snack cups, in the Peanut Butter flavor, from third-party retailer Amazon.

52.   In or around December 2020, Ms. Brand purchased a 10-count package of SlimFast Keto Fat Bomb Shots, in the Tangy Orange Crème flavor, from third-party retailer Amazon.

53.   Prior to purchase, Ms. Brand carefully read the advertising material for and front label on the Products, including the prominent zero- and zero-added sugar claims made by the Defendant.

54.   Given the Defendant's advertising material and other assurances, Ms. Brand understood these claims to mean that the Products were low- or reduced-calorie snacks. She relied on Defendant's statements such that she would not have purchased the Products from Defendant if the truth were known, or would have only been willing to pay a substantially reduced price for the Product had she known that Defendant's representations were deceptive and misleading.

## CLASS ACTION ALLEGATIONS

55.  Plaintiff brings this action individually and as representative of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of a California Class: All persons within the State of California who purchased the Defendant's Products within four years prior to the filing of this Complaint.

56.  Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

57.  Plaintiff reserves the right to alter the Class definition as necessary at any time to the full extent permitted by applicable law.

58.  Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

59.  **Numerosity – Rule 23(a)(1)**: The size of the Class is so large that joinder of all Class members is impracticable. Plaintiff believes and avers there are thousands of Class members geographically dispersed throughout California.

60.  **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3)**: There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual

Class members. Common legal and factual questions and issues include but are not limited to:

a) Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are misleading and deceptive;

b) Whether Defendant's actions violate the state consumer fraud statutes invoked below;

c) Whether a reasonable consumer would understand Defendant's sugar claims to imply that the Products were low- or reduced-calorie foods;

d) Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class members;

e) the proper amount of damages and disgorgement or restitution;

f) the proper scope of injunctive relief; and

g) the proper amount of attorneys' fees.

61. Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

62.   In short, these common questions of fact and law predominate over questions that affect only individual Class members.

63.   **Typicality – Rule 23(a)(3)**: Plaintiff's claims are typical of the claims of the Class members because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

64.   Specifically, all Class members, including Plaintiff, were harmed in the same way due to SlimFast's uniform misconduct described herein; all Class members suffered similar economic injury due to SlimFast's misrepresentations; and Plaintiff seeks the same relief as the Class members.

65.   There are no defenses available to SlimFast that are unique to the named Plaintiff.

66.   **Adequacy of Representation – Rule 23(a)(4)**: Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against SlimFast.

67.   Furthermore, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

68.   **Superiority – Rule 23(b)(3)**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons:

a)   the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address SlimFast's conduct such that it would be virtually impossible for the Class members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

b)   the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single Court;

c)   the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

d)   the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests of other Class members or would substantively impair or impede their ability to protect their interests.

69.    Unless the Class is certified, SlimFast will retain monies received as a result of its unlawful and deceptive conduct alleged herein.

70.    Unless a class-wide injunction is issued, SlimFast will likely continue to, or allow its resellers to, advertise, market, promote, and sell the Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Class will continue to be misled, harmed, and denied their rights under the law.

71.    **Ascertainability**. To the extent ascertainability is required, the Class members are readily ascertainable from SlimFast's records and/or its agents' records of retail and online sales, as well as through public notice.

72.    SlimFast has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

## COUNT 1
## VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE § 1750 *ET SEQ.*

73.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

74.    Plaintiff and all Class members are "consumers" within the meaning of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

75.    The sale of the Products to Plaintiff and Class members was a "transaction" within the meaning of the CLRA, Cal. Civ. Code § 1761(e).

76.   The Products purchased by Plaintiff and Class members are "goods" within the meaning of the CLRA, Cal. Civ. Code § 1761(a).

77.   As alleged herein, SlimFast's business practices are a violation of the CLRA because, knowing that consumers associate zero-sugar foods (and especially zero-sugar foods sold by a brand with a strong consumer profile such as SlimFast) with low- or reduced-calorie foods, Defendant deceptively failed to reveal facts that are material in light of the sugar claims that were made.

78.   Defendant's ongoing failure to provide material facts about the Products on the Products' label and associated advertising material violates the following subsections of Cal. Civ. Code § 1770(a) in these respects:

a)   Defendant's acts and practices constitute misrepresentations that the Products have characteristics, benefits, or uses which they do not have;

b)   Defendant misrepresented that the Products are of a particular standard, quality, and/or grade, when they are of another;

c)   Defendant's acts and practices constitute the advertisement of goods, without the intent to sell them as advertised;

d)   Defendant's acts and practices fail to represent that transactions involving the Products involve actions that are prohibited by law, particularly the use of misleading nutritional labelling; and

e) Defendant's acts and practices constitute representations that the Products have been supplied in accordance with previous representations when they were not.

79. By reason of the foregoing, Plaintiff and the Class have been irreparably harmed, entitling them to injunctive relief, disgorgement, and restitution.

80. Pursuant to Cal. Civ. Code § 1782, Plaintiff notified Defendant in writing of the particular violations of the CLRA described herein and demanded Defendant rectify the actions described above by providing complete monetary relief, agreeing to be bound by their legal obligations and to give notice to all affected customers of their intent to do so. Plaintiff sent this notice by certified mail, return receipt requested, to Defendant's agent, at least 30 days before the filing of this Complaint.

81. Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiff and the Class are entitled to recover actual damages sustained as a result of SlimFast's violations of the CLRA. Such damages include, without limitation, monetary losses and actual, punitive, and consequential damages, in an amount to be proven at trial.

82. Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiff is entitled to enjoin publication of misleading and deceptive nutritional labels for the Product and to recover her reasonable attorneys' fees and costs.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNT 2**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE**
**SECTION 17200 *ET SEQ*. — "UNFAIR" CONDUCT**

83.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

84.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of SlimFast's actions as set forth above.

85.    Class members have suffered injury in fact and have lost money or property as a result of SlimFast's actions as set forth above.

86.    SlimFast's actions as alleged in this Complaint constitute "unfair" conduct within the meaning of California Business and Professions Code Section 17200, *et seq*.

87.    SlimFast's business practices, as alleged herein, are "unfair" because Defendant deceptively failed to reveal facts that are material in light of the zero-sugar representations that were made.

88.    As a result of this "unfair" conduct, Plaintiff and members of the Class expended money they would not otherwise have spent and received a lower quality product that did not provide the benefit they were assured it would provide.

89.    Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy

and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers

90.    Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class seek an order of this court enjoining SlimFast from continuing to engage in "unfair" business practices and any other act prohibited by law, including those acts set forth in this Complaint.

91.    Plaintiff and the Class also seek an order requiring Defendant to make full restitution of all monies it has wrongfully obtained from Plaintiff and the class, along with all other relief allowable under Business and Professions Code Section 17200, *et seq.*

## COUNT 3
## VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 *ET SEQ.* — "FRAUDULENT" CONDUCT

92.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

93.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth above.

94.    Class members have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth above.

95.   Defendant's actions as alleged in this Complaint constitute "fraudulent" conduct within the meaning of California Business and Professions Code Section 17200 *et seq*.

96.   Defendant's business practices, as alleged herein, are "fraudulent" because it deceptively failed to reveal facts that are material in light of the sugar claims that were made.

97.   As a result of this "fraudulent" conduct, Plaintiff and members of the Class expended money they would not otherwise have spent, and received a lower quality product that did not provide the benefit they were assured it would provide.

98.   Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers

99.   Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage in "fraudulent" business practices and any other act prohibited by law, including those acts set forth in this Complaint.

100.  Plaintiff and the Class also seek an order requiring Defendant to make full restitution of all monies it has wrongfully obtained from Plaintiffs and the

Class, along with all other relief allowable under Business and Professions Code Section 17200, *et seq*.

## COUNT 4
### VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 *ET SEQ.* — "UNLAWFUL" CONDUCT

101. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

102. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth above.

103. Class members have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth above.

104. Defendant's actions as alleged in this Complaint constitute "unlawful" conduct within the meaning of California Business and Professions Code Section 17200, *et seq*.

105. Defendant's business practices, as alleged herein, are "unlawful" because it deceptively failed to reveal facts that are material in light of the sugar claims that were made, in contravention of binding legal requirements governing the accuracy of nutritional labelling.

106. As a result of this "unlawful" conduct, Plaintiff and members of the Class expended money they would not otherwise have spent, and received a lower quality product that did not provide the benefit they were assured it would provide.

107. Defendant's business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

108. Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class seek an order of this court enjoining Defendant from continuing to engage in "unlawful" business practices and any other act prohibited by law, including those acts set forth in this Complaint.

109. Plaintiff and the Class also seek an order requiring Defendant to make full restitution of all moneys it has wrongfully obtained from plaintiffs and the class, along with all other relief allowable under Business and Professions Code Section 17200, *et seq.*

## COUNT 5
## VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17500 *ET SEQ.*

110. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

111. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth above.

112. Class members have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth above.

113. Defendant engaged in advertising and marketing to the public and offered for sale advertising services on a nationwide basis, including in California.

114. Defendant engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the sale of the Products to customers like Plaintiff.

115. Defendant's advertisements and marketing representations regarding the characteristics of the Products were misleading and deceptive as set forth above.

116. At the time it made and disseminated the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of Business and Professions Code Section 17500, *et seq*.

117. Plaintiff seeks restitution of monies wrongfully obtained, injunctive relief, and all other relief allowable under Business and Professions Code Section 17500, *et seq*.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNT 6**
**UNJUST ENRICHMENT**

118.  Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative in the event that it is determined that Plaintiff and the Class lack an adequate legal remedy.

119.  Defendant, through its marketing and labeling of the Products, misrepresented and deceived Plaintiff and the Class by failing to reveal facts that are material in light of the sugar claims that were made.

120.  Defendant did so for the purpose of enriching itself and it in fact enriched itself by doing so.

121.  Plaintiff and the Class conferred a benefit on Defendant by purchasing the Products, including an effective premium, above the true value of the Products. Defendant appreciated, accepted, and retained the benefit to the detriment of Plaintiff and the Class.

122.  Defendant continues to possess monies paid by Plaintiff and the Class to which Defendant is not entitled.

123.  Under the circumstances it would be inequitable for Defendant to retain the benefit conferred upon it and Defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.

CLASS ACTION COMPLAINT

124. Plaintiff, individually and on behalf of the Class members, seeks disgorgement of Defendant's ill-gotten gains. Plaintiff and the Class seek the disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

## PRAYER FOR RELIEF

125. WHEREFORE, Plaintiff respectfully requests the Court grant the following relief against Defendant:

a)   that this action be certified as a class action; that Plaintiff be appointed as class representative for the Class; and that the undersigned be appointed as class counsel for the Class;

b)   that the Court enter an order requiring Defendant to bear the costs of notification to the Class;

c)   that the Court enter a declaration or declaratory judgment that Defendant's acts and practices have violated and continue to violate California Business & Professional Code Sections 17200 *et seq*. and 17500 *et seq*.;

d)   that the Court enter an order enjoining Defendant to refrain from the acts and practices described herein;

e)   that the Court enter an order requiring imposition of a constructive trust and and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and all members of the Class to restore to the Plaintiff and members of the Class all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent or unfair business act or practice, in violation of laws, statutes or regulations, or one constituting unfair competition;

f)   that the Court distribute monies via fluid recovery or *cy pres* where necessary to prevent Defendant from retaining the benefits of its wrongful conduct;

g)   actual damages including but not limited to compensatory, incidental, consequential, statutory, treble, and punitive damages amounts the Court or jury will determine, in accordance with applicable law;

f)   attorney's fees and court costs, including all recoverable interest;

g)   any other legal or equitable relief to which Plaintiff or the Class members may be entitled.

TRIAL BY JURY IS DEMANDED.

Respectfully submitted,

/s/ *Charles C. Weller*
Charles C. Weller (SBN: 207034)
Attorney for Plaintiff

March 24, 2022