# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KASAMA BRAND, individually and on behalf of all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KSF ACQUISITION CORPORATION dba SLIMFAST, a Delaware Corporation,<br><br>Defendant. | Case No.: 22-cv-392-LAB-JLB<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT [Dkt. 11]** |

Plaintiff Kasama Brand brought this putative class action against Defendant KSF Acquisition Corporation ("SlimFast") for violations of state law stemming from the labeling on two of SlimFast's keto food products. Brand's First Amended Complaint ("FAC") alleges claims for violation of California's Consumer Legal Remedies Act, Unfair Competition Law, and False Advertising Law, along with a claim for unjust enrichment. (Dkt. 5, FAC). SlimFast moved to dismiss the FAC in its entirety for failure to state a claim upon which relief can be granted. (Dkt. 11).

Having considered the parties' submissions and the relevant law, the Court **GRANTS** SlimFast's motion to dismiss, and **DISMISSES** the FAC in its entirety.
//

## I. BACKGROUND

SlimFast is a Delaware corporation specializing in weight loss and meal replacement products. (FAC ¶¶ 33–35). Since the 1950s, it has produced various weight loss and diet products, such as meal replacement shakes. (*Id.* ¶ 34). Today, SlimFast markets foods under different diet plans and product labels, including a line of "ketogenic" products. (*Id.* ¶¶ 35, 38). "Keto" and "ketogenic" describe a diet whose practitioners eat foods low in carbohydrates and high in protein.[1] (*Id.* ¶ 23). As part of its keto product line, SlimFast markets a snack cup called "Fat Bomb," (*id.* ¶¶ 40–41), and a snack gel called "Fat Bomb Shot," (*id.* ¶ 44) (collectively, the "Products"). While the Products come in various flavors, the versions purchased here were chocolate peanut butter cup Fat Bombs and tangy orange crème Fat Bomb Shots. (*Id.* ¶¶ 40–46).

The following are images of the front labels of the Products:

 

---

[1] Ketogenic diets are generally "very low in carbohydrate, modest in protein, and high in fat." Lee Crosby, et al., *Ketogenic Diets & Chronic Disease: Weighing the Benefits Against the Risks*, Frontiers in Nutrition 1 (July 16, 2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8322232/pdf/fnut-08-702802.pdf. However, the FAC doesn't allege this fact, so the Court doesn't consider it in reaching its decision.

(*id.* ¶ 41 (Fat Bomb), ¶ 45 (Fat Bomb Shot)). Additionally, the following are images of the Products' nutrition facts panels:



(*See* Dkt. 11-2 Ex. 1 (left image, Fat Bomb), Ex. 2 (right image, Fat Bomb Shot)).[2]

---

[2] "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside of the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). However, a court may "consider certain materials . . . without converting the motion to dismiss into a motion for summary judgment." *Ritchie*, 342 F.3d at 908 (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994); 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.34[2] (3d ed. 1999)). A document not attached to the complaint "may be incorporated by reference into a complaint if . . . the document forms the basis of the plaintiff's claim. The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.* Here, the FAC's claims are based the content of the Products' packaging, but includes images of the front labels only. (FAC ¶ 59). SlimFast attaches images of the entire packaging, including the "Nutrition Facts" panels on the back. (*See* Dkt. 11-2 Ex. 1–2). The Court finds that the Products' entire packaging "forms the basis of the plaintiff's claim[s]," is incorporated by reference into the FAC, and appropriately assumed to be true for the purposes of this Order. *Ritchie*, 342 F.3d at 908.

The front label of the Fat Bomb includes the claim "zero added sugar," (FAC ¶ 41), and a six-ounce serving contains 90 calories, (*id.* ¶ 3). Similarly, the front label of the Fat Bomb Shot includes the claim "zero sugar," (*id.* ¶ 45), and a one-ounce serving contains 100 calories, (*id.* ¶ 3).

The federal Food and Drug Administration ("FDA") has promulgated regulations governing the sugar content claims manufacturers can make on food labels. *See* 21 C.F.R. § 101.60(c). These regulations require that any food advertised as "sugar free" or "no sugar added" must either be a low- or reduced-calorie food or include a disclaimer that it isn't such a food. *See* § 101.60(c)(1) ("sugar free" and similar claims); § 101.60(c)(2) ("no added sugar" and similar clams); *see also* § 101.60(b)(2)(i) (defining low-calorie food as containing 40 calories or less). Foods with a "no sugar added" claim must also direct consumers' attention to the nutrition panel. § 101.60(c)(2)(v).

Kasama Brand is a resident of San Diego, California. (FAC ¶ 9). On November 22, 2020, she purchased a 14-count box of Fat Bombs from Amazon for $9.97. (*Id.* ¶ 56). On December 22, 2020, she purchased a 10-count box of Fat Bomb Shots from Amazon for $9.99. (*Id.* ¶ 57). Brand sought out SlimFast products because of the brand's association with low-calorie foods and weight loss. (*Id.* ¶ 58). Before purchasing the Products, Brand examined the advertising materials and sugar claims made on the front labels. (*Id.* ¶ 59). The Products—which the FAC alleges include sugar claims governed by § 101.60(c)—contain more than 40 calories but don't include the required disclaimer. (*Id.* ¶¶ 3–4, 48–49). Brand alleges the failure to include the disclaimer constitutes deceptive and misleading advertising. (*Id.* ¶ 60). She further alleges that, if the disclaimers were included, she wouldn't have purchased the Products or would have only been willing to pay a reduced price. (*Id.*).

Brand also alleges that SlimFast's conduct violated California's Consumer Legal Remedies Act ("CLRA"), (*id.* ¶¶ 80–89 (first claim)); the "unfair,"

"fraudulent," and "unlawful" prongs of California's Unfair Competition Law ("UCL"), (*id.* ¶¶ 90–116 (second through fourth claims)); and California's False Advertising Law ("FAL"), (*id.* ¶¶ 117–24 (fifth claim)). Finally, she maintains that this conduct unjustly enriched SlimFast. (*Id.* ¶¶ 125–31 (sixth claim)).

Brand initiated this putative class action on March 24, 2022. (Dkt. 1). On June 6, 2022, she filed her FAC. (Dkt. 5, FAC). SlimFast moved to dismiss the FAC in its entirety on August 5, 2022. (Dkt. 11).

## II.   LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is plausible if the factual allegations supporting it permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations need not be detailed; instead, the plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. The plausibility standard isn't a "'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). Courts aren't required to accept legal conclusions couched as factual allegations and "formulaic recitation[s] of the elements of a cause of action" aren't sufficient. *Twombly*, 550 U.S. at 555. Ultimately, a court must determine whether the plaintiff's alleged facts, if proven, permit the court to grant the requested relief. *See Iqbal*, 556 U.S. at 666; Fed. R. Civ. P. 8(a)(2).

//
//
//

## III. DISCUSSION

### A. Article III Standing for Injunctive Relief

The FAC's first through fifth claims seek an order enjoining SlimFast from engaging in the allegedly misleading and deceptive advertising detailed in the FAC. (FAC ¶¶ 89, 97, 106, 115, 124). SlimFast moves to dismiss the claims for injunctive relief, arguing Brand lacks standing to pursue such relief. (Dkt. 11-1 at 8–9). A plaintiff must demonstrate standing for each form of relief requested. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC) Inc.*, 528 U.S. 167, 185 (2000). For prospective injunctive relief, a plaintiff must show a threat of future injury that is "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (holding the "threatened injury must be certainly impending to constitute injury in fact" and "allegations of possible future injury are not sufficient"). When the threatened injury would be a repeated injury, a plaintiff must show "a sufficient likelihood that he will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 (1983).

"[A] previously deceived consumer *may* have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018) (emphasis added) (quoting *Summers*, 555 U.S. at 493). For a previously deceived consumer to establish standing in this situation, the complaint must sufficiently allege "an imminent or actual threat of future harm caused by [the] allegedly false advertising," such as a desire to purchase the product again at some point in the future. *Id.* at 970.

Here, the FAC alleges Brand was injured by SlimFast's allegedly deceptive and misleading advertising and labeling and seeks an injunction to stop SlimFast

from continuing to engage in this conduct. (FAC ¶¶ 89, 97, 106, 115, 124). But, the FAC makes no allegation that Brand desires or intends to purchase the Products again. Without such an allegation, any future harm is "conjectural or hypothetical," not "actual and imminent." *Summers*, 555 U.S. at 493.

Brand cites *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018), and *Vinluan-Jularbal v. Redbubble, Inc.*, No. 21-cv-573-JAM-JDP, 2021 WL 4286539, at *2 (E.D. Cal. Sept. 21, 2021), arguing those cases support finding Brand has standing to bring her claims for injunctive relief. (Dkt. 12 at 14–15). Both *Davidson* and *Vinluan-Jularbal* are distinguishable because the plaintiffs in those cases had demonstrated a desire to purchase products from the defendant corporations again. *See Davidson*, 889 F.3d at 971 (finding standing when complaint alleged plaintiff desired to purchase defendant's product in the future); *Vinluan-Jularbal*, 2021 WL 4286539, at *2 (finding standing when plaintiff stated "she would make further purchases from [defendant's website] in the future if she could be assured the products were not counterfeits"). Brand makes no such allegation here.

The Court **GRANTS** SlimFast's motion to dismiss the FAC's claims for injunctive relief, and claims one through five are **DISMISSED** to the extent they seek such relief.

B.   **Equitable Relief**

The FAC's first claim seeks both money damages and equitable relief under the CLRA, (FAC ¶¶ 86, 89), and the second through fifth claims seek only equitable relief under the UCL and FAL, (*id.* ¶¶ 97–98, 106–07, 115–16, 124). SlimFast moves to dismiss the claims for equitable relief, arguing Brand isn't entitled to such relief because she fails to allege any facts showing the inadequacy of an award of damages. (Dkt. 11 at 9–11).

A plaintiff may seek equitable relief only if she lacks an adequate legal remedy, such as money damages. *See Mort v. United States*, 86 F.3d 890, 892

(9th Cir. 1996) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992)) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law." (ellipsis in original)); *see also, e.g.*, *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009) ("[E]quitable relief is not appropriate where an adequate remedy exists at law."). A plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). *Sonner's* "adequate remedy at law" requirement extends to claims under the FAL, *see, e.g.*, *Robie v. Trader Joe's Co.*, No. 20-cv-7355-JSW, 2021 WL 2548960, at *6 (N.D. Cal. June 14, 2021), and to claims for injunctive relief, a form of equitable relief, *see, e.g.*, *Rivera v. Jeld-Wen, Inc.*, No. 21-cv-1816-AJB-AHG, 2022 WL 3702934, at *12 (S.D. Cal. Feb. 4, 2022), *Shay v. Apple Inc.*, No. 20-cv-1629-GPC-BLM, 2021 WL 1733385, at *4 (S.D. Cal. May 3, 2021) (collecting cases). *But see Gross v. Vilore Foods Co.*, No. 20-cv-894-DMS-JLB, 2020 WL 6319131, at *3 (S.D. Cal. Oct. 28, 2020) (denying dismissal and distinguishing *Sonner* where the plaintiff sought both restitution and injunctive relief).

Brand attempts to distinguish *Sonner*, arguing it "was in a radically different posture than this case and is inapposite." (Dkt. 12 at 16). But, "District courts have rejected a plaintiff's attempt to distinguish *Sonner* based on the procedural posture of the case." *Rivera*, 2022 WL 3702934, at *12 (collecting cases); *see also Lisner v. Sparc Grp. LLC,* No. 21-cv-5713-AB (GJSx), 2021 WL 6284158, at *8 (C.D. Cal. Dec. 29, 2021) (collecting cases and holding "that *Sonner's* reasoning applies at the pleading stage"). "As such, under *Sonner*, a plaintiff must plead inadequate legal remedies in the operative pleading to allege claims for equitable relief." *Rivera*, 2022 WL 3702934, at *12.

Brand also argues that she is able to plead her claims for equitable relief in the alternative under Rule 8, "in the event it is determined after discovery that

1 Plaintiff lacks an adequate remedy at law." (Dkt. 12 at 15). However, the cases
2 Brand cites to support this proposition pre-date *Sonner*. (*Id.* at 16). And, under
3 *Sonner*, "[t]he issue is not whether a pleading may seek distinct forms of relief in
4 the alternative, but rather whether a prayer for equitable relief states a claim if the
5 pleading does not demonstrate the inadequacy of a legal remedy. On that point,
6 *Sonner* holds that it does not." *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891,
7 907 (N.D. Cal. 2021) (citing *Sonner*, 971 F.3d at 844).

8 Here, the FAC pleads claims for equitable relief in the alternative, but
9 doesn't plead inadequate legal remedies. (FAC ¶¶ 80, 90, 99, 108, 117).
10 Therefore, the FAC fails to state a claim for equitable relief under *Sonner*. *Accord*
11 *Sharma*, 524 F. Supp. 3d at 907.

12 The Court **GRANTS** SlimFast's motion to dismiss the FAC's claims for
13 equitable relief, and claims one through five are **DISMISSED** to the extent they
14 seek such relief.

15 **C. CLRA Claims**

16 The FAC's first claim alleges SlimFast violated the CLRA, Cal. Civ. Code
17 §§ 1750, *et seq.*, by deceptively failing to reveal material facts about the Products.
18 (FAC ¶¶ 84–86). SlimFast argues the FAC fails to state a claim under the CLRA
19 because the Products' labels are truthful and not likely to mislead a reasonable
20 consumer. (Dkt. 11 at 9–11). The CLRA prohibits "unfair methods of competition
21 and unfair or deceptive acts or practices undertaken by any person in a
22 transaction intended to result or that results in the sale or lease of goods or
23 services to any consumer." Cal. Civ. Code § 1770(a). "Conduct that is 'likely to
24 mislead a reasonable consumer' violates the CLRA." *Wilson v. Hewlett-Packard*
25 *Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). (quoting *Colgan v. Leatherman Tool*
26 *Grp., Inc.*, 135 Cal. App. 4th 663, 680 (2006)). The CLRA prohibits "not only
27 advertising which is false, but also advertising which, although true, is either
28 actually misleading or which has a capacity, likelihood or tendency to deceive or

confuse the public." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002) (internal marks and citation omitted). To determine whether a promotion is likely to mislead a reasonable consumer, courts consider the context of the "promotion as a whole." *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995).

In addition to barring affirmative misrepresentations, the CLRA also prohibits omissions in some circumstances. *Wilson*, 668 F.3d at 1140–43. Regardless of which theory a plaintiff relies on, "Rule 9(b)'s heightened pleading standards apply to claims under the CLRA." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted). Therefore, to state a CLRA claim, a complaint must allege "the particular circumstances surrounding" the alleged misrepresentations or omissions and state with particularity: (1) the product label or advertisement containing the statement the plaintiff relied on; (2) what is false or misleading about the statement; and (3) that the plaintiff relied on alleged misrepresentations or omissions. *Id.* at 1126; *see also Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228–29 (9th Cir. 2019); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (holding allegations of fraud must identify "the who, what, when, where, and how of the misconduct charged") (internal quotation marks and citation omitted); *Watkins v. MGA Entm't, Inc.*, 550 F. Supp. 3d 815, 833 (N.D. Cal. 2021) (holding claims under the CLRA sound in fraud and "must allege specific facts showing that [the plaintiff] relied on the alleged misrepresentations or omissions").

SlimFast argues the FAC fails to state a claim under either a misrepresentation or omission theory. (Dkt. 11-1 at 12–15). The Court addresses each argument in turn.

### 1.   Misrepresentation

The FAC alleges the Products' sugar claims are deceptive and misleading. It doesn't allege that these claims are false, instead arguing they are misleading because they don't make the disclosures required by federal regulation, (FAC

¶¶ 48–49 (citing 21 C.F.R. § 101.60(c)), and are produced by SlimFast, a brand with a "reputation for quality and association with low-calorie foods and weight loss," (*id.* ¶ 58; Dkt. 14 at 5–7).

SlimFast argues these allegations are insufficient to demonstrate that the Products' labels are "likely to mislead a reasonable consumer" for three reasons. First, SlimFast contends the FAC doesn't identify any affirmative misrepresentation. (Dkt. 11-1 at 13). Second, SlimFast argues the FAC's allegations that the Products' packaging violates FDA regulations can't support deceptive labeling claims. (*Id.* at 12–13). Third, SlimFast argues the FAC's allegations regarding Brand's reliance on the SlimFast brand fail to satisfy the requirements of Rule 9(b). (Dkt. 14 at 4–7).

### i.   Affirmative Misrepresentation

Brand argues the Products' sugar claims are deceptive and misleading because the Products aren't low-calorie. (Dkt. 12 at 5). She cites *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, 807 (2006), for the proposition that "[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable." (Dkt. 12 at 5).

The Products' front label prominently displays the labels "fat bombs" and "keto," and states the Products are "optimal low-carb ketogenic nutrition" and contain MCT oil. (FAC ¶¶ 41, 45). The Fat Bomb's front label states "zero added sugar," (*id.* ¶ 41), and the Fat Bomb Shot's front label states "zero sugar," (*id.* ¶ 45). The back of the packaging includes nutrition information which states a six-ounce serving of Fat Bombs contains 90 calories and a one-ounce Fat Bomb Shot contains 100 calories. (*Id.* ¶¶ 3–4; Dkt. 11-1 at 3, 5). The FAC notes the keto diet centers on foods that are low in carbohydrates and high in proteins, (FAC ¶ 23), but doesn't allege that all keto foods are low-calorie. Nor does the FAC allege that the sugar claims are false. In fact, the sugar claims are accurate: the

Fat Bomb contains no added sugar, (*see* Dkt. 11-2 Ex. 1), and the Fat Bomb Shot contains no sugar, (*see id.* at Ex. 2).

The Court finds that the accurate sugar claims here aren't "affirmative misrepresentations that preclude[] consideration of [the] rear/side label[s] in evaluating how a reasonable customer would perceive the Product[s]." *See, e.g.*, *Varela v. Walmart, Inc.*, No. CV 20-4448-GW-KSx, 2021 WL 8565989, at *8 (C.D. Cal. Mar. 23, 2021) (holding that a court may consider a product's back or side labels to determine whether a statement is deceptive or misleading when front label contains no affirmative representations and finding the claim "Vitamin E skin oil" wasn't an affirmative misrepresentation when the front label included the accurate amount of Vitamin E in the bottle) (emphasis in original) (quoting *Williams v. Gerber Prods.*, 552 F.3d 934, 939 (9th Cir. 2008)). Thus, any ambiguity about the Products' caloric content created by the front label is dispelled by the context of the packaging as a whole. The Court finds the FAC fails to identify an affirmative misrepresentation that could deceive or mislead a reasonable consumer into believing the Products were low-calorie foods.

### ii. Violations of FDA Regulations for Sugar Claims

Allegations a product's label violates an FDA regulation can't form the basis of a deceptive labeling claim under the reasonable consumer test. *Nacarino v. Chobani, LLC*, No. 20-cv-7437-EMC, 2021 WL 3487117, at *10 n.5 (N.D. Cal. Aug. 9, 2021); *see also Steele v. Wegmans Food Mkts., Inc.*, 472 F. Supp. 3d 47, 49–50 (S.D.N.Y. 2020) (holding that FDA regulation compliance is irrelevant to deception claims because FDA enforcement is reserved for federal and state authorities). Even if Brand states a plausible violation of 21 C.F.R. § 101.60(c), that allegation doesn't determine whether the labels are deceptive or misleading to a reasonable consumer. *See, e.g.*, *Nacarino*, 2021 WL 3487117, at *10 n.5 ("Although Ms. Nacarino has stated a plausible violation of 21 C.F.R. § 101.22(i), she may not use that violation alone as the basis for her deceptive labeling claims,

which implicate the reasonable consumer test."). The Court finds the allegations that the Products violate regulations governing sugar claims don't demonstrate that the labels are deceptive or misleading to a reasonable consumer.

### iii. Consumer Associations with the SlimFast Brand

The FAC alleges that consumers associate the SlimFast brand with weight loss and diet foods. (*See* FAC ¶¶ 33–34, 36–37, 38–39, 58). In her opposition to the motion to dismiss, Brand argues the reasonable consumer analysis must account for "the associations and beliefs that customers reasonably bring not just to a particular label but to the brand as a whole, and how those associations color a consumer's understanding of the Products' label." (Dkt. 14 at 7). She argues that "SlimFast has successfully trained consumers to believe its Products are all low-calorie," and contends that failing to include a disclaimer about the caloric content of the Fat Bomb and Fat Bomb Shot is therefore misleading. (*Id.*).

To state a plausible claim under Brand's theory, the FAC' allegations must satisfy the requirements of Rule 9(b) by "stat[ing] with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Kearns*, 567 F.3d at 1125; *see also Vess*, 317 F.3d at 1106 (holding allegations of fraud must identify "the who, what, when, where, and how of the misconduct charged"). Here, the FAC alleges SlimFast is a prominent company in the field of weight loss well known for its low-calorie foods. (FAC ¶¶ 33–34). It specifically identifies SlimFast's meal replacement shakes and a series of television commercials aired in the 1980s. (*Id.* ¶ 34). However, the FAC doesn't allege that all SlimFast products are low-calorie.[3] Instead, it alleges Brand relied on SlimFast's "reputation for quality and association with low-calorie foods and weight loss" and "the advertising

---

[3] According to SlimFast, the meal replacement shake referenced in the FAC contains 180 calories per serving. (Dkt. 14 at 6). If true, the shake wouldn't be considered a low-calorie food under the FDA's definition. *See* 21 C.F.R. § 101.60(b)(2)(i) (defining a low-calorie food as containing 40 calories or less).

material for and front label on the Products, including the prominent zero- and zero-added sugar claims" to conclude the Products were low- or reduced-calorie. (*Id.* ¶¶ 59–60). The FAC doesn't identify which particular advertisements Brand relied on to form her belief that all SlimFast products are low-calorie, nor does it allege she actually relied on the unidentified advertisements. *Watkins*, 550 F. Supp. 3d at 833.

The Court finds that the FAC allegations regarding Brand's association between SlimFast and low-calorie foods fail to satisfy Rule 9(b)'s heightened pleading standard.

### 2. Omission

SlimFast argues the FAC fails to state a CLRA claim based on an omission for two reasons. (Dkt. 11-1 at 13–15). First, SlimFast argues the packaging here doesn't omit any material information. (Dkt. 11-1 at 13). Second, SlimFast argues the FAC doesn't allege SlimFast had a duty to disclose that the Products aren't low-calorie on the front label. (*Id.* at 16–15).

"[A]n omission is actionable under the CLRA if the omitted fact is (1) 'contrary to a [material] representation actually made by the defendant' or (2) is 'a fact the defendant was obliged to disclose.'" *Gutierrez v. Carmax Auto Superstores Cal.*, 19 Cal. App. 5th 1234, 1258 (2018) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006)). To state an actionable omission claim under either theory, a plaintiff must identify an omission. To sufficiently state a claim that the defendant had a duty to disclose a fact, a plaintiff must allege the omission was material; the alleged defect was central to the product's function; and facts sufficient to demonstrate one of the four factors enumerated in *LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997). *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863 (9th Cir. 2018). The *LiMandri* factors are:

> (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts

> not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed.

*LiMandri*, 52 Cal. App. 4th at 336 (quoting *Heliotis v. Schuman*, 181 Cal. App. 3d 646, 651 (1986)).

The FAC alleges the Products' packaging includes the challenged sugar claims, (FAC ¶¶ 41, 45), without including a disclaimer that the Products aren't low-calorie, (*id.* ¶¶ 5–7, 48–49, 60, 84–85). Brand argues this omission is material because calorie content is important for consumers following a keto diet. (*Id.* ¶ 47; Dkt. 12 at 10). The FAC doesn't allege that SlimFast omitted the caloric content from the packaging entirely.

Accepting that the front label is ambiguous as to the Products' calorie content, the Court may consider the back label because the front doesn't contain any affirmative misrepresentations. *See, e.g.*, *Varela*, 2021 WL 8565989, at *8. Here, the back label clearly and accurately states the Products' caloric content, resolving any ambiguity about whether the Products are low-calorie. (FAC ¶¶ 3–4; Dkt. 11-1 at 3, 5). The Court finds the FAC fails to allege the Products' packaging omits any fact.

* * *

The Court **GRANTS** SlimFast's motion to dismiss the FAC's CLRA claim, and that claim is **DISMISSED**.

### D. FAL Claim and UCL Claims Under the "Unfair" and "Fraudulent" Prongs

The FAC's second and third claims arise under the UCL, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and allege violations of that statute's "unfair" prong, (FAC ¶¶ 90–98), and "fraudulent" prong, (*id.* ¶¶ 99–107), respectively. The fifth claim alleges a violation of the FAL, §§ 17500 *et seq.* (FAC ¶¶ 117–24). SlimFast

argues these claims should be dismissed because they rely on the same theory as the CLRA claims. (Dkt. 11-1 at 16).

The UCL is a consumer protection statute that broadly prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each of these three adjectives captures 'a separate and distinct theory of liability.'" *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quoting *Kearns*, 567 F.3d at 1127). Claims for allegedly misleading or deceptive advertising under the UCL and FAL apply the same reasonable consumer test as the CLRA. *Becerra*, 945 F.3d at 1228. If a court dismisses a CLRA claim, it may also dismiss UCL and FAL claims relying on the same theory. *See Hodsdon*, 891 F.3d at 865–68.

Here, the FAL claim and the claims under the UCL's unfair and fraudulent prongs are based on the same theory as the CLRA claim. (*See* FAC ¶¶ 94, 103 (alleging SlimFast's business practices are unfair and fraudulent because "it deceptively failed to reveal facts that are material in light of the zero sugar representations"); *id.* ¶ 122 ("Defendant's advertisements and marketing representations regarding the characteristics of the Products were misleading and deceptive as set forth above.")). As previously discussed, the Court dismissed the CLRA claim because it failed to sufficiently allege misleading or deceptive advertising. For the same reasons, the Court finds the FAL claim and claims under the UCL's unfair and fraudulent prongs fail to state a claim.

The Court **GRANTS** SlimFast's motion to dismiss the FAC's second, third, and fifth claims, and those claims are **DISMISSED**.

E.   **UCL Claim Under the "Unlawful" Prong**

The FAC's fourth claim alleges a violation the UCL's "unlawful" prong. (*Id.* ¶¶ 108–16). The UCL's unlawful prong "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable*." Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016)

(quoting *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)). Thus, a plaintiff states a claim under the unlawful prong by sufficiently alleging a violation of another statute. *Rubio*, 613 F.3d at 1204.

SlimFast argues this claim should be dismissed for three reasons. (Dkt. 11-1 at 16–19). First, SlimFast argues the claim fails to the extent it is predicated on a violation of the CLRA or FAL. (*Id.* at 16–17). Second, SlimFast argues the FAC doesn't establish Brand has statutory standing to bring the claim. (*Id.* at 17). Third, SlimFast argues the claim is impliedly preempted by *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 343 (2001). (Dkt. 11-1 at 17–19). The Court discusses each argument in turn.

The FAC's UCL claim under the unlawful prong appears to be predicated on alleged violations of the CLRA, FAL, and FDA regulations governing the sugar claims. (FAC ¶ 112). The Court dismissed the FAC's CLRA and FAL claims, but alleged violations of FDA regulations could still support Brand's remaining UCL claim. Therefore, SlimFast's motion to dismiss is **DENIED** to the extent is seeks to dismiss the remaining UCL claim solely based on the dismissal of the CLRA and FAL claims.

SlimFast maintains that Brand lacks standing under the UCL. To have statutory standing under the UCL, a plaintiff must have "lost money or property as a result of the unfair competition" alleged in the complaint. Cal. Bus. & Prof. Code § 17204. In other words, a plaintiff "must demonstrate some form of economic injury." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011). "A consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of section 17204 by alleging . . . that he or she would not have bought the product but for the misrepresentation. That assertion is sufficient . . . to allege economic injury." *Id.* at 330. A complaint can sufficiently demonstrate economic injury by alleging a product's labeling didn't comply with FDA regulations and that the plaintiff wouldn't have purchased the

product if the labeling had conformed with the regulation. *See, e.g.*, *Khasin v. Hershey Co.*, No. 12-CV-1862 EJD, 2012 WL 5471153, at *6 (N.D. Cal. Nov. 9, 2012). Here, the FAC alleges the Products' labels omitted the disclaimer required by 21 C.F.R. § 101.60(c) and that Brand wouldn't have purchased the Products if they had conformed with the labeling requirement. (FAC ¶¶ 112–13 ("As a result of this 'unlawful' conduct, Plaintiff and members of the Class expended money they would not otherwise have spent.")). The Court finds these allegations are sufficient to establish statutory standing under the UCL. SlimFast's motion to dismiss is **DENIED** to the extent is seeks to dismiss the FAC's remaining UCL claim for lack of standing.

As regards SlimFast's preemption argument, Brand's claim is based on an alleged violation of 21 C.F.R. § 101.60(c), an FDA regulation promulgated under the federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 341, *et seq.* The FDCA expressly preempts any inconsistent state law. *See* 21 U.S.C. § 343-1(a). Under *Buckman*, a plaintiff's claims are preempted if they attempt to privately enforce FDA labeling regulations. *See* 531 U.S. at 350 ("State-law fraud-on-the-FDA claims inevitably conflict with the FDA's responsibility to police fraud consistently with the Administration's judgment and objectives."). To avoid preemption, a state law claim based on a federal labelling requirement must thread a "narrow gap": "The plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by [21 U.S.C. § 343-1(a)]), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)." *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (emphasis in original) (quoting *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1205 (8th Cir. 2010)). District courts have consistently found that state-law food-labeling claims brought under California's Sherman Law thread this narrow gap and aren't preempted. *See, e.g.*, *Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986, 995 (S.D. Cal.

2015) (collecting cases); *Vassigh v. Bai Brands, LLC*, No. 14-cv-5127-HSG, 2015 WL 4238886, at *4–5 (N.D. Cal. July 13, 2015) (collecting cases); *Hesano v. Iovate Health Scis., Inc*, No. 12-cv-1960-WQH-JMA, 2014 WL 197719, at *7 (S.D. Cal. Jan. 15, 2014) ("The FDCA . . . does not preclude states from adopting their own parallel laws and adopting a different mechanism for enforcing those laws."); *Trazo v. Nestle USA, Inc.*, No. 12-CV-2272 PSG, 2013 WL 4083218, at *7 (N.D. Cal. Aug. 9, 2013) ("While state law tort actions cannot be used to improperly intrude on the FDA's exclusive jurisdiction, Plaintiffs here sue under state law—namely, the Sherman Law, UCL, FAL, and CLRA—and so their claims are not impliedly preempted."). *But see Chong v. Kind LLC*, 585 F. Supp. 3d 1215, 1219 (N.D. Cal. 2022) (finding that plaintiffs' claims were preempted when they weren't "pursuing pre-existing, traditional, state tort law claims," and instead "rel[ied] on California's Sherman Law, which post-dates and is entirely dependent upon the FDCA, in that it expressly adopts the FDCA and regulations as state law").

Brand argues her claims aren't preempted because she "relies on the FDCA and FDA regulations only to the extent such laws and regulations have been separately enacted as state law or regulation or provide a predicate basis of liability under state laws like the Sherman Law, UCL, FAL, and CLRA." (Dkt. 12 at 19 (quoting *Brown v. Van's Int'l Foods, Inc.*, No. 22-cv-1-WHO, 2022 WL 1471454, at *7 (N.D. Cal. May 10, 2022) (internal quotation marks omitted)). But the Court has dismissed Brand's FAL, CLRA, and other UCL claims, and the FAC doesn't allege violations of the Sherman Act. Without such allegations, the remaining UCL claim seeks to impose liability "*because* [SlimFast's] conduct violates the FDCA," and "such a claim [is] impliedly preempted under *Buckman*." *See Perez*, 711 F.3d at 1120.

The Court **GRANTS** SlimFast's motion to dismiss the FAC's fourth claim, and that claim is **DISMISSED**.

### F. Unjust Enrichment and Money Had and Received Claims

The FAC's sixth claim asserts a quasi-contract claim for unjust enrichment. (FAC ¶¶ 125–31). SlimFast moves to dismiss this claim because California doesn't recognize an independent claim for unjust enrichment. Under California law, "[u]njust enrichment is not a cause of action, [it is] just a restitution claim." *Hill v. Roll Int'l Corp.*, 195 Cal. App.4th 1295, 1307 (2011); *see also Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1070 (N.D. Cal. 2021) ("California does not recognize a separate cause of action for unjust enrichment.") (quoting *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132–33 (N.D. Cal. 2020) (collecting California and federal cases)).

The Court has dismissed all of the FAC's other claims, leaving the unjust enrichment claim as the sole remaining claim. Even if the Court construes the claim as a restitution claim, it still can't be asserted as a standalone claim. The Court **GRANTS** SlimFast's motion to dismiss the FAC's sixth claim, and that claim is **DISMISSED**.

### IV. CONCLUSION

For the forgoing reasons, the Court **GRANTS** SlimFast's motion to dismiss, and **DISMISSES** the FAC in its entirety. To the extent Brand wishes to amend her claims, she may do so by filing a motion for leave to amend by **March 31, 2023**, in accordance with the Southern District's Civil Local Rules and this Court's Civil Standing Order.

**IT IS SO ORDERED.**

Dated: March 17, 2023

*Larry A. Burns*
**Hon. Larry Alan Burns**
United States District Judge